IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ARTURO RIVERA                             §
     TDCJ-CID #716185                  §
V.                                        §          C.A. NO. C-04-552
                                          §
JULIO SALAZAR, ET AL.                     §

## MEMORANDUM AND RECOMMENDATION
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C.

§ 1983, asserting claims of retaliation and conspiracy.  (D.E. 1).  Defendants move

for summary judgment to dismiss plaintiff's claims.  (D.E. 35).  Following an

extension of time, (D.E. 47), plaintiff has filed a response in opposition.  (D.E. 50,

51, 52).  For the reasons stated herein, it is respectfully recommended that

defendants' motion for summary judgment be granted, and that plaintiff's claims be

dismissed on the merits.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action

pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated at the McConnell Unit in Beeville, Texas.

In his *pro se* complaint, (D.E. 1), plaintiff complained that certain McConnell Unit

officers and officials had retaliated against him and/or conspired to retaliate against

him for exercising his right of access to the courts and the grievance system.  By

Memorandum and Recommendation entered January 6, 2005, it was recommended

that plaintiff's retaliation claims against Julio Salazar and Alan Cantu be retained.

(D.E. 7).  It was further recommended that plaintiff's claims against the other

named defendants be dismissed as frivolous and for failure to state a claim.  Id.

Plaintiff filed objections to the recommendation. (D.E. 12).  By order entered

January 27, 2005, the Court adopted the recommendation.  (D.E.13).  Plaintiff's

claims against Officer Salazar and Officer Cantu were retained, but plaintiff's

remaining claims were dismissed.[1]

### III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the

relevant portions of plaintiff's grievance records.  See (D.E. 35, Ex. A).  In

opposition, plaintiff offers the following:

> (D.E. 52, Ex. A):      Fact sheet for Office of Inspector General Investigation
> Division;
>
> (D.E. 52, Ex. B-1):    Denial of legal visit on June 15, 2005;
>
> (D.E. 52, Ex. B-2):    Witness statement of offender Benny Sarmiento, dated
> May 26, 2004;

---

[1] Plaintiff has appealed the dismissal of those claims.  See (D.E. 22).

(D.E. 52, Ex. B-3):   Witness statement of offender Gilbert Herrera, dated May 26, 2004;

(D.E. 52, Ex. B-4):   Witness statement of offender John Bell, dated May 26, 2004; and

(D.E. 52, Ex. C):   Preliminary investigation report dated May 18, 2004.

In addition, plaintiff offers his statement of disputed facts, (D.E. 50), and declaration in opposition to defendants' summary judgment motion. (D.E. 51).

The following facts are not in dispute:

On May 17, 2004, while escorting plaintiff back to his cell following a cell search, Officer Salazar grabbed plaintiff by his upper arm and "applied a vice-grip force sufficient to cause pain." (D.E. 51, at ¶ 5). Plaintiff's hands were handcuffed behind his back at the time. Id. at ¶ 6. Plaintiff asked Officer Salazar to stop; however, Officer Salazar increased the amount of pressure on plaintiff's arm, ordered plaintiff to walk, and forcefully pulled him along. Id. at ¶ 7. Plaintiff asked Officer Salazar if he had a personal problem with him, and Officer Salazar replied that he did. Id. at 8. Officer Salazar then shoved plaintiff into his cell. Id. at ¶ 9. Officer Cantu observed Officer Salazar escort and "strong-arm" plaintiff, but he did not intervene or help plaintiff, although plaintiff asked him to do so. Id. at ¶ ¶10-12. A short while later, plaintiff and Officer Salazar exchanged words

3

over the escort, and plaintiff repeatedly requested to speak to a supervisor.  Id. at

13-23.  Officer Salazar and Officer Cantu refused to call a supervisor.  Id. at 24.

At 2:30 a.m., on May 18, 2004, Sergeant Navejas came to plaintiff's cell and

served him with a disciplinary case for possession of contraband, a "point-blade."

(D.E. 51 at ¶ 25).  Sergeant Navejas indicated that Officer Salazar had found the

blade in plaintiff's tennis shoes during the cell search.  Id. at 26.  Plaintiff told

Sergeant Navejas that the disciplinary charge was false and that Officer Salazar had

filed the disciplinary action in retaliation for plaintiff's threatening to contact

Officer Salazar's supervisor earlier that day.  Id. at ¶ 29.  Plaintiff then gave

Sergeant Navejas a written statement, addressed to Warden Castillo, complaining

that Officer Salazar had used excessive force when escorting plaintiff back to his

cell.  Id. at ¶¶ 29-32.[2]  (D.E. 1 at 10). Sergeant Navejas read the statement and then

arranged for medical personnel to examine plaintiff's arm.  (D.E. 51 at ¶¶ 33-34).

Sergeant Navejas said she would place plaintiff's statement and the disciplinary

report on Captain Ambriz's desk so that he would see them the next morning.  Id. at

¶ 36.

At 5:30 a.m., Sergeant Bleibdrey served plaintiff with two disciplinary cases

that were both initiated by Officer Salazar.  (D.E. 51 at  ¶ 37).  One case, for

---

[2]  A copy of plaintiff's statement to Warden Castillo is part of the record.  See (D.E. 12, Ex.
B).

possession of contraband, was identical to the one previously served by Sergeant Navejas, except that the contraband was identified as two razors rather than a point-blade.  Id. at ¶ 38.  In the second case, Officer Salazar charged plaintiff with threatening an officer.  Id. at ¶ 39.  Plaintiff told Sergeant Bleibdrey that Officer Salazar was retaliating against him.  Id. at  ¶ 41.  Sergeant Bleibdrey took plaintiff's statement and left.  Id.

On May 18, 2004, plaintiff was moved to administrative segregation.  (D.E. 51 at ¶ 42).  The Administrative Segregation Plan stated that the "[r]eason for placement is due to the offender's recent aggressive behavior as evident by his current charge of 4.0-threatening to inflict harm upon staff."  (D.E. 12, Ex. A.) Plaintiff was not allowed to possess his personal property while in administrative segregation and was in fear for his life.  (D.E. 51 at ¶ 44).

On May 29, 2004, plaintiff filed a step 1 grievance against Officer Salazar, complaining that Officer Salazar had filed a false disciplinary case against him in retaliation for plaintiff's threat to contact his supervisor.  (D.E. 1, Ex. A).

On June 3, 2004, a disciplinary hearing was held on Officer Salazar's charges against plaintiff for possessing contraband and threatening an officer.  (D.E. 35, Ex. A at 2).  The charge of threatening an officer was dismissed.[3]  Id.  Plaintiff,

_____

[3] Plaintiff has offered the witness statements of three offenders related to the disciplinary charges against him.  Offender Sarmiento states that Officer Salazar told plaintiff he "had a problem"

5

however, was found guilty of possessing contraband for which he received thirty days commissary restriction, fifteen days recreation restriction; a reduction from S-4 to Line 1, and loss of four days of good-time credits.  Id.

On June 7, 2004, plaintiff filed a step 1 grievance, appealing his disciplinary conviction for possession of contraband.  (D.E. 1, Ex. C at 1-2).  He complained that Officer Salazar gave false testimony and that there were many contradictions and inconsistencies between the case served by Sergeant Navejas and the case served by Sergeant Bleibdrey.[4]  Id.  The disciplinary hearing officer ("DHO") found "point blade" and razors to be synonymous.  Id.  In addition, the DHO found inconsequential the fact that Officer Salazar testified that he found the contraband in 5-cell, but plaintiff was assigned to 4-cell.  Id.  The DHO denied plaintiff's request to admit the original charge report into evidence.  Id.

On June 24, 2004, Investigator J. Puente filed his Office of Inspector General fact sheet regarding  plaintiff's claim of excessive force against Officer Salazar.  (D.E. 52, Ex. A).  Investigator Puente noted that no medical or use of force report had been filed in connection with the alleged use of force incident on May 17, 2004.

_____

with plaintiff and refused to call a supervisor.  (D.E. 52, Ex. B-1).  Offender Herrera states the same and that Officer Cantu told plaintiff that he should have "just sat down."  (D.E. 52, Ex. B-2).  Offender John Bell testified that plaintiff never threatened Officer Salazar and that Officer Salazar "talked trash" to plaintiff.  (D.E. 52, Ex. B-3).

[4]  Officer Salazar admitted at the disciplinary hearing that he re-wrote the original case.

Id.  On July 6, 2004, it was determined that no investigation would be opened on plaintiff's excessive force claim against Officer Salazar.  Id.

On July 17, 2004, Warden Stephens denied plaintiff's May 29 step 1 grievance, noting that the Inspector General had been advised of plaintiff's claim concerning excessive force against Officer Salazar, and that the Inspector General had declined to open a case.  (D.E. 1, Ex. A at 2).  As to the disciplinary charges, Warden Stephens noted that the charge for threatening an officer had been dismissed and that there was sufficient evidence to support the finding of guilty on the contraband charge.  Id.  In addition, he denied plaintiff's June 7 step 1 grievance appealing the disciplinary case because this case was redundant.  (D.E. 1, Ex. C at 2).  Plaintiff's step 2 grievances were also both denied.  (D.E. 1, Exs. B, D).

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this

determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.

## V.  DISCUSSION

### A.    Retaliation.

Plaintiff contends that defendants retaliated against him for threatening to contact a supervisor and filing a grievance against Officer Salazar for excessive force.  Plaintiff claims that, shortly after he told Officer Salazar and Officer Cantu that he wanted to complain to a supervisor about Officer Salazar's excessive force and Officer Cantu's acquiescence, Officer Salazar filed a disciplinary case against

him and Officer Cantu executed a false witness statement.  Plaintiff maintains that the proximity of these events establishes a chronology of events from which retaliation may plausibly be inferred.

The Fifth Circuit has stated that "a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).  "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).  The inmate must be able to point to a specific constitutional right that has been violated.  Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999).  The inmate must allege more than his personal belief that he is the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997).  Conclusory allegations of retaliation are insufficient.  Woods, 60 F.3d at 1166.  "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"  Id. (citation omitted).  Causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred.  McDonald, 132 F.3d at 231.

10

The Fifth Circuit has cautioned that prisoner claims of retaliation must be examined with skepticism and particular care:

> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.  Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

Woods, 60 F.3d at 1166.

### 1.    *Case for threatening to inflict harm on an officer.*

Officer Salazar wrote plaintiff a disciplinary case for threatening to inflict harm on an officer.  That case was dismissed at the disciplinary hearing and plaintiff received no punishment.  (D.E. 35, Ex. A at 2).  Defendants argue that plaintiff cannot establish the third prong of the McDonald test, that he suffered an "adverse act" regarding that disciplinary charge because the case was dismissed and that any related injury from the dismissed case was "*de minimis.*"  Plaintiff argues that he suffered an adverse act as a result of the false charge because he was placed in administrative segregation for 22 days where he was denied his personal property and subjected to more dangerous offenders.  (D.E. 51 at ¶ 45).

The Texas Attorney General has been advancing recently the argument that a *de minimis* adverse act cannot support a claim for retaliation.  See e.g., Hart v. Hairston, 343 F.3d 762 (5th Cir. 2003).  In Hart, the Fifth Circuit acknowledged that

11

it had not specifically addressed the quantum of injury necessary to constitute an "adverse act" for purposes of a retaliation claim; however, on the facts of that case, it specifically found that 27 days of commissary and cell restriction was not a *de minimis* injury and could sustain a claim for retaliation.  Id. at 764.  In this case, plaintiff complains of 22 days in administrative segregation where he was stripped of privileges and separated from his personal property.  This pre-hearing punishment is at least equal, if not more severe, than the punishment suffered by the Hart inmate.  Thus, it is recommended that defendants' motion for summary judgment to dismiss plaintiff's retaliation claim arising from the charge for threatening an officer based on a *de minimis* adverse act be denied.

Although plaintiff has demonstrated an adverse act for purposes of his retaliation claim, he fails to establish the necessary causation; that is, but for defendants' retaliatory motive, the complained of incident would not have occurred.  Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996).  Personal beliefs and conclusional allegations are not sufficient.  Jones, 188 F.3d at 325.

The chronology of this case shows that plaintiff allegedly threatened Officer Salazar when he was being escorted back to his cell, that is, ***before*** plaintiff had threatened to file a grievance against either officer.  Because plaintiff had not yet declared his intent to exercise his right of access to the grievance system, he fails to

12

offer any motive for Officer Salazar or Officer Cantu to engage in a retaliatory act.

See Rogers v. Flores, 273 F.3d 1100 (5th Cir. Aug. 21 2001) (unpublished) (no

evidence of causation where adverse act occurred before the filing of grievance).

Accordingly, it is recommended that plaintiff's claims against Officer Salazar and

Officer Cantu based on the charge for threatening an officer be dismissed.

### 2.    *Possession of contraband.*

Plaintiff argues that Officer Salazar "planted" contraband in his cell and filed

a false disciplinary case against him in retaliation for his threatening to contact a

ranking officer and file a grievance regarding Officer Salazar's alleged use of force

earlier that day.  Plaintiff claims that Officer Cantu filed a false witness statement in

the disciplinary case for the same reason, in retaliation for plaintiff exercising his

right to the grievance system.

In his summary judgment response, plaintiff argues that calling a supervisor

is an informal step of the grievance process that must be taken prior to filing a

grievance.  He argues:

> ... [o]nce Plaintiff Rivera requested from Defendants Salazar and Cantu to
> summon their Supervisor to be heard on his complaint and attempt to
> informally resolve it, Plaintiff Rivera had engaged his First Amendment right
> of access to courts which includes the right to seek redress through an
> established prison system.

(D.E. 52, at 25-26).

To the extent plaintiff attempts to equate calling a supervisor with filing a grievance, the comparison fails because inmates do not have a constitutional right to speak to a supervisor.  The TDCJ grievance system, while encouraging informal resolution of prisoner complaints, does not provide for informal resolution.  Rather, the TDCJ provides a two-step procedure for presenting administrative grievances.

Step 1 requires the prisoner to submit an administrative grievance at the institutional level.  Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to Texas Department of Criminal Justice, Administrative Directive No. AD-03.82 (rev.1), Policy, ¶ IV (Jan. 31, 1997)).  After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator.  Id.

Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ.  Id.  After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for step 2 of the process, which is the director, deputy director, regional director, or assistant director.  Id.  To the extent

plaintiff claims that defendants retaliated against him because he was exercising his right to call a supervisor, there is no such right, and his retaliation claim fails.

Plaintiff also alleges that defendants retaliated against him because he threatened to file a grievance.

Prisoners have a constitutional right of adequate and meaningful access to the courts, and this includes the right to file grievances under the prison grievance system. McDonald, 132 F.3d at 230 (5th Cir. 1998). However, the right is not unlimited and encompasses only "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Johnson, 110 F.3d at 310-11 (quoting Lewis v. Casey, 518 U.S. 343, 356 (1996)).

In the instant case, plaintiff claims that defendants retaliated against him because he threatened to file a grievance against Officer Salazar for the alleged use of force and against Officer Cantu for failing to intervene. However, the facts of this case do not present a chronology of events from which retaliation could reasonably be inferred. Here, the alleged excessive force and plaintiff's threat to file a grievance occurred *after* Officer Salazar had searched plaintiff's cell. That is, the search of plaintiff's cell (and Officer Salazar's supposed "planting of evidence") occurred *prior to* plaintiff stating he was going to file a grievance. Thus, plaintiff

15

fails to offer a motive for either Officer Salazar or Officer Cantu, and the chronology of events does not suggest retaliation.  See Rogers, 273 F.3d at 1100.

Moreover, the undisputed facts establish that plaintiff did file an excessive force complaint against Officer Salazar and that it was considered and rejected.  See (D.E. 12, Ex. B) (copy of plaintiff's letter dated May 17, 2004, addressed to Warden Castillo, alleging assault and battery against Officer Salazar); (D.E. 52, Ex. A) (copy of Investigator Puente's report finding no reason to investigate complaint).  The Fifth Circuit has held that "neither any frivolous filings nor secondary litigation activity ... may comprise the basis of a retaliation claim."  Johnson, 110 F.3d at 311. Here, plaintiff's threatened grievance, that Officer Salazar used excessive force when he gripped plaintiff's arm, was investigated by prison officials and determined to lack merit.  See (D.E. 52, Ex. A) (O.I.G. fact sheet noting that no use of force or medical report was filed for May 17, 2004, and that an investigation would not be opened).   Because plaintiff's  grievance against Officer Salazar would have been frivolous, it may not be the basis of a retaliation claim.  Id.

In addition, plaintiff was found guilty of possession of contraband, which is some evidence that Officer Salazar's case against him was neither false nor retaliatory.   Although favorable termination of disciplinary proceeding is not a prerequisite to a retaliation claim, if the disciplinary report is legitimate, its existence

16

"is probative and potent summary judgment evidence, as would be evidence of the number, nature, and disposition of prior retaliation complaints by the inmate." Woods, 60 F.3d at 1166.  Here, after being charged with possession of contraband, plaintiff was appointed counsel substitute and the charge was investigated.  See (D.E. 35, Ex. A at 16-23) (plaintiff's "statement in defense"); Id. at 24-27 (plaintiff's questions propounded to Officer Salazar with answers); Id. at 28-30 (plaintiff's questions propounded to Officer Cantu with answers); Id. at 34 (plaintiff's closing argument); Id. at 11-12 (plaintiff's letter to his counsel substitute); Id. at 10 (counsel substitute's investigation work sheet).  At the conclusion of the hearing, the DHO found plaintiff guilty of possessing razor blades.  (D.E. 35, Ex. A at 1).  Plaintiff offers no evidence to support his allegation that the contraband was planted.  There is no "direct link" between plaintiff's intention to complain about Officer Salazar and the finding of contraband in his cell.  See Hart, 343 F.3d at 764.

As to defendant Officer Cantu, plaintiff fails to establish the elements of a retaliation claim.  Officer Cantu's mere involvement in the disciplinary proceedings against him, without more, does not establish either a retalitory motive or causation. Hart, 343 F.3d at 765.

**B.     Conspiracy.**

Plaintiff claims that defendants conspired to retaliate against him for
exercising his right of access to the grievance system.

To allege a claim of conspiracy to deprive a plaintiff of his constitutional
rights, a plaintiff must allege (1) a conspiracy involving two or more persons;
(2) for the purpose of depriving, directly or indirectly, a person or class of persons
of the equal protection of the laws; and (3) an act in furtherance of the conspiracy;
(4) which causes injury to a person or property, or deprivation of any right or
privilege of a citizen of the United States.  Hilliard v. Ferguson, 30 F.3d 649 (5th
Cir. 1994).  Where all of the defendants are members of the same collective entity,
however, the conspiracy does not involve two or more people.  Hilliard, 30 F.3d at
653; see also Moody v. Jefferson Parish Sch. Bd., 803 F. Supp. 1158, 1166 (E.D. La.
1992) (School Board, Principal, Vice-Principal, and various teachers are all
employed by the Jefferson Parish School Board and, thus, are a single entity), aff'd,
2 F.3d 604 (5th Cir.1993); Hankins v. Dallas Indep. Sch. Dist., 698 F.Supp. 1323,
1330 (N.D.Tex. 1988) (high school and its officials constitute a single entity);
Chambliss v. Foote, 421 F. Supp. 12, 15 (E.D. La. 1976) ("the university and its
officials are considered as constituting a single legal entity which cannot conspire
with itself"), aff'd, 562 F.2d 1015 (5th Cir.1977).

Plaintiff produces no facts, other than his personal belief, that there is a conspiracy.  Such allegations alone fail to state a claim.  <u>McAfee v. 5th Circuit Judges</u>, 884 F.2d 221 at 222 (5th Cir. 1989) (conclusory allegations lacking reference to material facts are not sufficient to state a claim of conspiracy under section 1983).   Moreover, both defendants are members of the same collective entity, such that plaintiff fails to state a conspiracy claim.  <u>Hilliard</u>, 30 F.3d at 653.  It is recommended that plaintiff's conspiracy claim be dismissed as frivolous and for failure to state a claim upon which relief can be granted.

## C.   Plaintiff's proposed disputed facts.

Plaintiff argues that summary judgment is not appropriate because there exists genuine issues of material fact.  <u>See</u> (D.E. 50).  However, the disputed facts identified by plaintiff have no bearing on his retaliation claims.  For example, plaintiff claims that a fact issue exists as to whether Officer Salazar committed an assault and battery or used excessive force against him on May 17, 2004, and whether Officer Salazar reported the alleged use of force.  <u>See</u> <u>id.</u>, (questions 2 & 3).  The uncontroverted evidence establishes that no use of force report was filed.  (D.E. 52, Ex. A).   Moreover, whether Officer Salazar's squeezing of plaintiff's upper arm during the escort constitutes an excessive force is not an issue before this Court, nor is it relevant to the retaliation inquiry.  Assuming Officer Salazar did use

excessive force against plaintiff, that incident occurred after plaintiff's cell was search and the contraband allegedly planted.  Plaintiff offers no motive to explain why Officer Salazar would have planted evidence against him during the cell search.

Similarly, plaintiff argues that a factual issue exists as to whether Officer Salazar planted evidence against him.  In fact, that issue was decided against plaintiff at the prison disciplinary hearing.  The rest of the disputed fact issues have been resolved in plaintiff's favor.  There is no genuine issue of a material fact on plaintiff's claims of retaliation that would preclude summary judgment in defendants' favor.

## VI.  RECOMMENDATION

For the reasons stated above, it is respectfully recommended that defendants' motion for summary judgment (D.E. 35) be granted, and that plaintiff's claims be dismissed with prejudice.

Respectfully submitted this 29th day of July 2005.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to FED. R. CIV. P. 72(b), 28 U.S.C. § 636(b)(1)(C), and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).