IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTURO RIVERA | § | |
|    TDCJ-CID #716185 | § | |
| | § | |
| v. | § | C.A. NO. C-04-552 |
| | § | |
| JULIO SALAZAR, ET AL. | § | |

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In this civil rights action, plaintiff Arturo Rivera alleges that defendant Julio Salazar filed a false disciplinary case against him in retaliation for plaintiff's complaining to a supervisor about defendant's behavior, in violation of his first amendment rights.  Pending is plaintiff's motion for a partial summary judgment, (D.E. 82), to which defendant has filed a response. (D.E. 84).  For the reasons stated herein, plaintiff's motion is denied, and this case shall proceed to trial.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.  Upon consent of the parties, (D.E. 77, 87), this case was reassigned to the undersigned magistrate judge to conduct all further proceedings, including a jury trial and entry of final judgment.  28 U.S.C. § 636(c).

## II.  PROCEDURAL BACKGROUND

Plaintiff is in the custody of the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the Ferguson Unit in Midway, Texas, although his claims arose while he was housed at the McConnell Unit in Beeville, Texas.  He filed this civil rights action on November 8, 2004, against certain McConnell Unit officers and officials alleging claims of retaliation, civil conspiracy, and

supervisor liability.  (D.E. 1).  By Memorandum and Recommendation entered January 6, 2005,

it was recommended that plaintiff's conspiracy and supervisory claims against certain defendants

be dismissed, but that the Court retain his retaliation and conspiracy claims against Officer

Salazar and Officer Alan Cantu.  (D.E. 7).  By order entered January 26, 2005, the Court adopted

the recommendation.  (D.E. 13, 14).

On May 31, 2005, defendants filed a motion for summary judgment.  (D.E. 35).  On July

29, 2005, it was recommended that defendants' motion be granted.  (D.E. 53).  The Court

adopted the recommendation and dismissed plaintiff's claims.  (D.E. 59, 60).  Plaintiff appealed.

(D.E. 61).

By order entered January 26, 2006, the Fifth Circuit affirmed the dismissal of all claims

against Officer Cantu.  (D.E. 71).  However, the Fifth Circuit reversed summary judgment in

favor of Officer Salazar, finding that a genuine issue of material fact existed as to whether

defendant possessed a retaliatory motive and whether plaintiff would have received two

disciplinary cases but for a retaliatory motive.  Id. at 3.

### III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

The undisputed facts of this case are set forth in detail in the July 29, 2005

recommendation.  (D.E. 53).[1]  In summary, the events of which plaintiff complains began on

May 17, 2004, when defendant was escorting plaintiff back to his cell following a cell search.

While plaintiff's arms were hand-cuffed behind his back, defendant grabbed plaintiff's upper

arm and "applied a vice-grip force sufficient to cause pain."  (D.E. 51, at ¶ 5).  Plaintiff asked

---

[1] Plaintiff's motion for summary judgment consists of argument only, as does defendant's response.

defendant to stop; however, defendant increased the amount of pressure on plaintiff's arm, and ordered plaintiff to walk and forcefully pulled him along.  Id. at ¶¶ 6-7.  Plaintiff asked defendant if he had a personal problem with him, and defendant replied that he did.  Id. at 8.  Defendant then shoved plaintiff into his cell.  Id. at ¶ 9.  A short while later, plaintiff and defendant exchanged words over the escort, and plaintiff repeatedly requested to speak to a supervisor.  Id. at 13-23.  Defendant refused to call a supervisor.  Id. at 24.

At 2:30 a.m. on May 18, 2004, Sergeant Navejas came to plaintiff's cell and served him with a disciplinary case for possession of contraband, namely a "point-blade."  (D.E. 51 at ¶ 25).  She indicated that defendant had found the blade in plaintiff's tennis shoes during the cell search.  Id. at 26.  Plaintiff told her that the disciplinary charge was false and that defendant had filed it in retaliation for plaintiff's threatening to contact defendant's supervisor earlier that day.  Id. at ¶ 29.  Plaintiff then gave Sergeant Navejas a written statement, addressed to Warden Castillo, complaining that defendant had used excessive force when escorting plaintiff back to his cell.  Id. at ¶¶ 29-32; see also (D.E. 12, Ex. B) (plaintiff's statement to Warden Castillo).  Sergeant Navejas read the statement and then arranged for medical personnel to examine plaintiff's arm.  (D.E. 51 at ¶¶ 33-34).  She said she would place plaintiff's statement and the disciplinary report on Captain Ambriz's desk so that he would see them the next morning.  Id. at ¶ 36.

At 5:30 a.m., Sergeant Bleibdrey served plaintiff with two disciplinary cases, both initiated by defendant.  (D.E. 51 at ¶ 37).  One case, for possession of contraband, was identical to the one previously served by Sergeant Navejas, except that the contraband was identified as two razors rather than a point-blade.  Id. at ¶ 38.  In the second case, defendant charged plaintiff

with threatening an officer.  Id. at ¶ 39.  Plaintiff told Sergeant Bleibdrey that defendant was

retaliating against him.  Id. at ¶ 41.  Sergeant Bleibdrey took plaintiff's statement and left.  Id.

On May 18, 2004, plaintiff was moved to administrative segregation.  (D.E. 51 at ¶ 42).

The Administrative Segregation Plan concerning his move explained that the "[r]eason for

placement is due to the offender's recent aggressive behavior as evident by his current charge of

4.0 – threatening to inflict harm upon staff."  (D.E. 12, Ex. A).  Plaintiff was not allowed to

possess his personal property while in administrative segregation and was in fear for his life.

(D.E. 51 at ¶ 44).

On May 29, 2004, plaintiff filed a step 1 grievance against defendant complaining that

defendant had filed a false disciplinary case against him in retaliation for plaintiff's threat to

contact his supervisor.  (D.E. 1, Ex. A).  A disciplinary hearing was held on June 3, 2004.  (D.E.

35, Ex. A at 2).  The charge of threatening an officer was dismissed.[2]  Id.  Plaintiff was found

guilty of possession of contraband.  Id.  As punishment, he received thirty days commissary

restriction, fifteen days recreation restriction; a reduction from S-4 to Line 1, and loss of four

days of good-time credits.  Id.

On June 7, 2004, plaintiff filed a step 1 grievance appealing his disciplinary conviction

for possession of contraband.  (D.E. 1, Ex. C at 1-2).  In his grievance, he complained that

defendant gave false testimony and that there were many contradictions and inconsistencies

---

[2] Plaintiff has offered the witness statements of three prisoners related to the disciplinary
charges against him.  Inmate Benny Sarmiento states that Officer Salazar told plaintiff he "had a
problem" with plaintiff and refused to call a supervisor.  (D.E. 52-2, at 4).  Inmate Gilbert
Herrera states the same and that Officer Cantu told plaintiff that he should have "just sat down."
Id. at 5.  Inmate John Bell testified that plaintiff never threatened Officer Salazar and that Officer
Salazar "talked trash" to plaintiff.  Id. at 6.

between the case served by Sergeant Navejas and the case served by Sergeant Bleibdrey.[3]  Id.
The disciplinary hearing officer ("DHO") found "point blade" and razors to be synonymous.  Id.
In addition, the DHO found inconsequential the fact that defendant testified that he found the
contraband in 5-cell, but plaintiff was assigned to 4-cell.  Id.  The DHO denied plaintiff's request
to admit the original charge report into evidence.  Id.

On June 24, 2004, Investigator J. Puente filed his O.I.G. fact sheet regarding plaintiff's
claim of excessive force against defendant.  (D.E. 52-2, at 1).  Investigator Puente noted that no
medical, or use of force report had been filed in connection with alleged use of force incident on
May 17, 2004.  Id.  On July 6, 2004, it was determined that no investigation would be opened on
plaintiff's excessive force claim against defendant.  Id.

On July 17, 2004, Warden Stephens denied plaintiff's May 29, 2004 grievance.  (D.E. 1,
Ex. A at 2).  Specifically, he indicated that the Inspector General had been advised of plaintiff's
claim concerning excessive force against defendant, and that the Inspector General had declined
to open a case.  Id.  Regarding the disciplinary charges, he noted that the threatening an officer
charge had been dismissed and found that there was sufficient evidence to support the finding of
guilty on the contraband charge.  Id.  In addition, Warden Stephens denied plaintiff's Step 1
grievance appealing the disciplinary case on the grounds that this case was redundant.  (D.E. 1,
Ex. C at 2).  Plaintiff's Step 2 grievances were also denied.  (D.E. 1, at Ex. B, Ex. D).

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is

---

[3] Officer Salazar admitted at the disciplinary hearing that he re-wrote the original case.

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses.  See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) (citation omitted).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial

does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248-49.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

## V.  DISCUSSION

In his pending motion for a partial summary judgment, plaintiff claims that there is no genuine issue of a material fact that defendant retaliated against him because he has shown that one of the disciplinary cases filed by defendant, that of threatening an officer, was dismissed by prison officials.  He contends that, because the case was thrown out, it was necessarily false, and, because it was false, it was necessarily filed by defendant in retaliation for plaintiff planning to exercise his right to speak to a supervisor.[4]

---

[4] A prisoner has a first amendment right to complain to a supervisor.  Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (per curiam) (citing McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)). The inmate must be able to point to a specific constitutional right that has been violated. Id. at 325. An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). The inmate "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Plaintiff's declarations, (D.E. 51), are summary judgment evidence from which a jury could find a chronology of events from which retaliation could plausibly be inferred. See Hart, 343 F.3d at 764.

Plaintiff claims that defendant filed the threatening an officer charge against him in retaliation for his stating that he would report defendant to a supervisor. The fact that the disciplinary case was dismissed may be *some evidence* that the case was retaliatory. However, just as a disciplinary charge might be "probative and potent" evidence that a prisoner committed an infraction, it is not an "absolute bar" to the prisoner arguing that the disciplinary case was filed in retaliation. Woods, 60 F.3d at 1166. Thus, conversely, the fact that the disciplinary case was dismissed does not conclusively establish that it was filed in retaliation. Plaintiff must still prove that defendant had a retaliatory motive and, also that, but for defendant's retaliatory motive, he would not have received the disciplinary cases. McDonald, 132 F.3d at 231. The

dismissal of the threatening an officer charge, in and of itself, does not address whether plaintiff would have received the disciplinary cases, but for defendant's retaliatory motive.

In remanding for further proceedings, the Fifth Circuit held that plaintiff's "declarations were sufficient to create a genuine issue of material fact as to his retaliation claim against defendant Salazar." Rivera v. Salazar, et al., No. 05-41692, 2007 WL 715300, at *2 (5th Cir. Mar. 5, 2007) (per curiam) (unpublished). It did **not** hold that, just because the one case was dismissed, it was filed in retaliation. Indeed, given the fact that correctional officers routinely file disciplinary cases, it is not unusual that some of those cases will be dismissed for any number of reasons including, insufficient evidence, conflicting testimony, or the inmate prevails.

The fact that a disciplinary case was dismissed does not, in and of itself, establish retaliatory motive. Plaintiff must still prove that, but for defendant's retaliatory motive, he would not have received the two disciplinary cases. As the Fifth Circuit explained, there is an issue of fact regarding retaliation by Officer Salazar. This question of fact must thus be resolved by a jury. Accordingly, summary judgment is not warranted.

## VI.  <u>CONCLUSION</u>

For the following reasons, plaintiff's motion for a partial summary judgment, (D.E. 82),

is DENIED.  This case shall proceed to trial as set forth in the June 7, 2007 Scheduling Order.

(D.E. 89).

ORDERED this 19th day of June, 2007.

BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE